OPINION
{¶ 1} Appellant-Father, Willis Crigger, filed this appeal from the judgment entered in the Fairfield County Court of Common Pleas, Juvenile Division, which terminated all parental rights, privileges and responsibilities of the parents, with regard to the minor child, Jaden Crigger, and ordered that permanent custody of the minor child be granted to Fairfield County Children's Services, (hereinafter, "Children's Services").
 {¶ 2} This appeal is expedited, and is being considered pursuant to App.R.11.2(C). The relevant facts leading to this appeal are as follows:
 STATEMENT OF THE FACTS AND CASE {¶ 3} This appeal pertains to the permanent custody disposition of Jaden Crigger, whose date of birth is October 19, 2005. Tamara Blake is the natural mother of the child. Willis Crigger, whose paternity was established in November of 2005, is the natural father.
 {¶ 4} At birth, Jaden was placed in the custody of the Children's Services pursuant to a voluntary agreement of care. Since the initial placement, two separate dependency actions have been filed being, an initial filing on December 14, 2005, and a re-filing of the dependency complaint on March 2, 2006.[1] Jaden has remained in the custody of Children's Services throughout these two related proceedings.
 {¶ 5} On March 30, 2006, the trial court found Jaden to be dependent pursuant to R.C. 2151.04(C) and placed him in the continued temporary custody of Children's Services.
 {¶ 6} On May 1, 2006, Children's Services filed a motion to amend the dependency complaint and motion for temporary custody, to a motion for permanent custody. In the motion for permanent custody, the Department alleged that the parents had repeatedly failed to remedy the concerns which led to the removal of the child, that the child could not be placed with either parent within a reasonable period of time and that it would be in the child's best interest for parental rights to be terminated. Specifically, the motion stated that neither parent had shown any interest in parenting or in having a relationship with Jaden.
 {¶ 7} On August 17, 2006, the trial court held a hearing on the permanent custody motion. Those who testified at the hearing included father, Willis Crigger, mother, Tamara Blake, guardian ad litem, Attorney Mark Ort and, Karla Nelson, Fairfield County Children Services Director of the Family-Based Care Division.
 {¶ 8} Karla Nelson testified regarding numerous aspects of Jaden's ongoing involvement which included Jaden's special needs and the parents' commitment and ability to provide a safe and stable home environment. She testified that Jaden suffered neurological damage at birth and is medically fragile. Specifically, she stated that Jaden suffers from contagious herpes simplex outbreaks, encephalitis and epilepsy. He has to be monitored everyday for herpes outbreaks and watched regularly for subtle signs of seizures. He has four different doctors including a pediatrician, a neonatologist, a neurologist and an infectious disease specialist. He also suffers from significant developmental delays and attends daily physical therapy to increase his muscle tone and motor skills. She stated that children with Jaden's complications have a minimal survival rate and that Jaden will continue to require intensive treatment. Ms. Nelson testified that Jaden has been placed with a foster family specially trained to deal with his special needs and that he has developed a significant bond with his foster parents.
 {¶ 9} Ms. Nelson testified that Jaden's mother, Tamara Blake, has not had contact with the child since his birth. As on cross, Ms. Blake testified that she had been incarcerated at least ten times and was currently serving a term of incarceration for escape with a scheduled release date in June, 2007. Ms. Blake admitted that she had seven other children who are in relative placement and that she was convicted in 1998 of felony child endangering. Ms. Blake stated that she could not do anything for Jaden.
 {¶ 10} Ms. Nelson testified that Jaden's father, Willis Crigger, was not suitable to parent Jaden. As on cross, Mr. Crigger admitted that he is the father of three other children who are not in his custody. Mr. Crigger testified that he established paternity for Jaden in November of 2005 was provided with a case plan and began to exercise visitation in December of 2005. Mr. Crigger's case plan included an assessment for substance abuse, stable housing, a reduction in criminal activity, parent education classes, and the ability to care for Jaden's special needs. Mr. Crigger has a lengthy criminal history and admitted to being incarcerated on at least ten separate occasions. In January of 2006, Mr. Crigger was "on the run" after he discovered that a domestic violence warrant had been issued for his arrest. Mr. Crigger's whereabouts were unknown until his arrest in on May 23, 2006, and he remained incarcerated until August 15, 2006. At the time of the permanent custody hearing, Mr. Crigger had been recently released from jail, had abandoned his child for more than ninety (90) days, was living with his mother, stepfather and three children in a three bedroom house, had failed to complete any portion of the case plan, and lacked any significant bond with his child. Furthermore, during his testimony, Mr. Crigger displayed an inability to understand and care for the special needs of his child.
 {¶ 11} Ms. Nelson testified that the paternal grandmother and paternal aunt were considered for relative placement. However, Ms. Nelson testified that the paternal grandmother wavered with regard to her desire for placement, and never followed-up to schedule a home study. She further stated that the paternal aunt has a criminal history, failed to attend a scheduled psychological evaluation and was on probation.
 {¶ 12} Finally, Ms. Nelson testified that Jaden needs a stable, secure environment to meet his physical needs. She stated that Jaden needs an environment free from criminal behavior and substance abuse in order to fulfill his potential. She stated that the parents' past criminal history, lack of involvement with the child, and failure to complete their case plans were significant indicators of their lack of commitment and inability to care for Jaden's special needs. She further testified that permanent custody was in the child's best interest.
 {¶ 13} In a written report, amended at the time of the hearing, the Guardian Ad Litem stated that a grant of permanent custody to the Department was in the child's best interest.
 {¶ 14} After hearing the evidence the trial court took the matter under advisement.
 {¶ 15} On September 26, 2006, via judgment entry, the trial court granted permanent custody of Jaden Crigger to Fairfield County Children's Services. Specifically, the trial court found that the parents had demonstrated a lack of commitment to Jaden by failing to regularly support, visit or communicate with the child, and by actions showing an unwillingness to provide an adequate permanent home for the child; that they had abandoned Jaden; and that they have a frequent history of incarceration which prevents them from providing care for Jaden. The trial court further acknowledged the mother's prior felony child endangering conviction of Jaden's sibling.
 {¶ 16} The mother, Tamara Blake, has not sought to appeal the trial court's decision. However, it is from this decision that Appellant-Father, Willis Crigger, now seeks to appeal assigning the following error for review:
 ASSIGNMENT OF ERROR: {¶ 17} "I. THE DECISION OF THE TRIAL COURT GRANTING PERMANENT CUSTODY OF APPELLANT'S CHILD TO FAIRFIELD COUNTY CHILDREN'S SERVICES WAS NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE THAT PERMANENT CUSTODY WAS IN THE CHILD'S BEST INTEREST AND THAT THE CHILD CANNOT BE PLACED WITH EITHER PARENT WITHIN A REASONABE TIME."
 {¶ 18} In his Assignment of Error, Appellant essentially argues that the trial court erred in granting permanent custody to Children's Services absent clear and convincing evidence that the child could not be placed or should not be placed with either parent within a reasonable period of time and that permanent custody was in the best interest of the child.
 {¶ 19} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758, unreported. The proof required must be clear and convincing. It is a degree of proof which is more than mere preponderance of the evidence, but not to the extent of such certainty as is required for the standard of beyond a reasonable doubt in criminal cases. State v Scheibel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54, certiori denied (1991), 499 U.S. 961, 111 S.Ct. 1584, 113 L.Ed.2d 649. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. CE. Morris Co. v.Foley Construction (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 20} A parent has a "fundamental liberty interest in the care, custody, and management of his or her child" Santosky v. Kramer (1982),455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. The Ohio Supreme Court has stated that "[p]ermanent termination of parental rights has been described as `the family equivalent of the death penalty in a criminal case' * * * Therefore, parents `must be afforded every procedural and substantive protection the law allows."'In re Hayes (1997),79 Ohio St.3d 46, 48, 679 N.E.2d 680 quoting In re Smith (1991),77 Ohio App.3d 1, 16, 601 NE.2d 45. However, the parent's rights are not absolute. Instead, "'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principal to be observed."'In re Cunningham
(1979), 59 Ohio St.2d 100, 106, 391 N.E.2d 1034, quoting In re R.J.C.
(Fla.App. 1974), 300 So.2d 54, 58. Accordingly, the State may terminate parental rights when the child's best interest demands such action. Inre Shifflet, Athens County App. No. 06CA13, 2006-Ohio-3576.
 {¶ 21} There are two ways that an authorized agency may seek to obtain permanent custody of a child under Ohio law. The agency may first obtain temporary custody and then subsequently file a motion for permanent custody, or the agency may request permanent custody as part of its original abuse, neglect, or dependency complaint. See R.C. 2151.413, R.C. 2151.27(C), and 2151.353(A)(4). In this case, the Department filed a motion seeking permanent custody pursuant to R.C. 2151.353(A)(4) as a modification of the original disposition.
 {¶ 22} Pursuant to R.C. 2151.35 and Juv.R.29 and 34, proceedings involving the termination of parental rights must be bifurcated into separate adjudicatory and dispositional hearings. See, In re Baby GirlBaxter (1985), 17 Ohio St.3d 229, 479 N.E.2d 257. Once a court adjudicates a child abused, neglected or dependent, R.C. 2151.353(A)(4) permits the court to commit a child to the permanent custody of a public children service agency "if the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section2151.414 of the Revised Code that the permanent commitment is in the best interest of the child."
 {¶ 23} Revised Code 2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with either parent within a reasonable time. The statute states in relevant part as follows:
 {¶ 24} "In determining at a hearing * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent within a reasonable period of time, the court shall consider all relevant evidence. If the court determines by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent:
 {¶ 25} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 26} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code;
 {¶ 27} "(3) The parent committed any abuse as described in section2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;
 {¶ 28} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 29} "(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
 {¶ 30} "(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under section2903.16, 2903.21, 2903.34, 2905.01, 2905.02, 2905.03, 2905.04, 2905.05,2907.07, 2907.08, 2907.09, 2907.12, 2907.21, 2907.22, 2907.23, 2907.25,2907.31, 2907.32, 2907.321, 2907.322, 2907.323, 2911.01, 2911.02,2911.11, 2911.12, 2919.12, 2919.24, 2919.25, 2923.12, 2923.12, 2923.161,2925.02, or 3716.11 of the Revised Code and the child or a sibling of the child was a victim of the offense or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.
 {¶ 31} "(7) The parent has been convicted of or pleaded guilty to one of the following:
 {¶ 32} "(a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
 {¶ 33} "(b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 {¶ 34} "(c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
 {¶ 35} "(d) An offense under section 2907.02, 2907.03, 2907.04,2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 {¶ 36} "(e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
 {¶ 37} "(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
 {¶ 38} "(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
 {¶ 39} "(10) The parent has abandoned the child.
 {¶ 40} "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child.
 {¶ 41} "(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.
 {¶ 42} "(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
 {¶ 43} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 {¶ 44} "(15) The parent has committed abuse as described in section2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
 {¶ 45} "(16) Any other factor the court considers relevant. "
 {¶ 46} A parent's past history is a factor which may be considered by the court as an indicator as to whether a child should be placed with a parent within a reasonable period of time. In other words, if the past history is likely to predict a recurrence of the situation which initially threatened the health and safety of the child, then a child should not be caused to endure the inevitable in order to give a parent the opportunity to prove suitability. The law does not require a court to gamble with a child's welfare. In Re East (1972), 32 Ohio Misc. 65,69, 288 N.E.2d 343, 346.
 {¶ 47} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:
 {¶ 48} "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 49} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 50} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period ending on or after March 18, 1999;
 {¶ 51} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 52} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 53} In this case, both parents have lengthy histories of incarceration. Both parents have repeatedly failed to visit, communicate and provide for Jaden. Finally, both parents have abandoned Jaden for more than ninety days. Finally Appellant's, trial testimony clearly indicated that he does not understand Jaden's daily physical and medical needs. Accordingly, we find the evidence to be substantial and credible that the child can not and should not be placed with either parent and that it is in the child's best interest to be provided with a safe and stable environment, which can only be available through a grant of permanent custody to Fairfield County Children's Services.
 {¶ 54} Upon review, based on the foregoing facts, we find that the trial court had clear and convincing evidence before it to grant the Fairfield County Children's Services permanent custody of the child.
 {¶ 55} Accordingly, Appellant's Assignment of Error is overruled.
 {¶ 56} The judgment of the Fairfield County Court of Common Pleas, Juvenile Division, is affirmed. Boggins, J. Gwin, P.J. and Hoffman, J. concur
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Fairfield County Court of Common Pleas, Juvenile Division, is affirmed.
[1] The trial on the complaint alleging dependency in Case No. 2005-AB-127 was filed on December 14, 2005. The adjudicatory hearing was continued two times. Due to statutory deadlines, the matter was dismissed and refilled March 2, 2006. *Page 1